UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:06-CV-569-R

TIMOTHY LANDIS                                                    PLAINTIFF

v.

PINNACLE EYE CARE, LLC, d/b/a
VISION FIRST; JOHN M. SCHMITT;
LOUISVILLE OPTOMETRIC CENTERS III, PSC,
Successor-in-Interest to
LOUISVILLE OPTOMETRIC CENTERS II, INC.;
and ROD RALLO                                                    DEFENDANTS

## MEMORANDUM OPINION

Defendants moved the Court to stay this matter and order that it be resolved through arbitration.  (Docket # 9).  The Plaintiff responded.  (Docket # 10).  Defendants replied in support of their Motion.  (Docket # 11).  The Defendants' Motion to Stay is GRANTED.

## BACKGROUND

Defendants claim that Plaintiff signed an Employment Agreement which bound him to arbitrate this dispute, making this Court an improper forum for Plaintiff's claims at this time. Plaintiff argues that the arbitration clause is not applicable to his claims in this matter.  In 1995, Defendant Louisville Optometric Center II ("LOC II") hired Plaintiff as an optometrist.  At his hiring, Plaintiff signed an Employment Agreement with LOC II.  In Article VII of the Employment Agreement, Plaintiff agreed to "resolve any controversy, dispute or disagreements arising out of or relating to [the] Agreement" through negotiation or mandated arbitration governed by the American Arbitration Association.  In 1999, LOC II was succeeded by Louisville Optometric Center III ("LOC III").  At this time, Plaintiff executed an almost identical

Employment Agreement, changing only his employer's name and not his obligations.  In 2002, Plaintiff's contract was again amended.  Only the compensation portion of the contract was changed, and Article VII remained intact.

Plaintiff also claims that several of the Defendants are not parties to the Employment Agreements which contain the arbitration clause and, therefore, that Plaintiff cannot be obligated to arbitrate complaints against those Defendants.  It is clear that, until his resignation in October, 2006, Plaintiff was employed and paid by LOC II or LOC III (referred to generally as "LOC").  In fact, his Employment Agreement states that Plaintiff's services as an optometrist "shall be exclusive to LOC."  Plaintiff has presented no evidence that he was ever employed or compensated by any other Defendants in this matter.

Rod Rallo ("Rallo") was employed as LOC's primary doctor of optometry throughout the events relevant to this matter.  John Schmitt ("Schmitt") is also an LOC employee, functioning as a manager.  In 1998, LOC became affiliated with NovaMed Eye Care Management, LLC, ("NovaMed") and American Eye Institute, PC.  In 2002, Rallo chose to end his management association with NovaMed and form a new management company, Pinnacle EyeCare, LLC ("Pinnacle").  Rallo and Schmitt own Pinnacle management company.  Since 2002, Rallo has directed LOC offices under the management of Pinnacle.  These offices do business under the name VisionFirst, which is not registered as a separate business entity.

In April, 2004, Plaintiff was ordered to report for duty in Afghanistan as a member of the Indiana National Guard.  Prior to his deployment, Plaintiff claims that Schmitt negotiated Plaintiff's employment upon his return on behalf of VisionFirst.  The Employment Agreement was not amended and does not include these terms.  Plaintiff provides no written proof of these

2

terms.  Plaintiff does not assert that he negotiated any additional terms with Pinnacle, Rallo, or LOC.  Furthermore, Section 8.7 of  Plaintiff's Employment Agreement with LOC states that the Employment Agreement "supersedes all prior or contemporaneous agreements, understandings or negotiations of the parties.  This Agreement shall not be modified, amended or supplemented except in a written instrument executed by both parties."

Plaintiff claims that his unwritten agreement with VisionFirst and Schmitt contained the following terms: during Plaintiff's deployment, VisionFirst would preserve Plaintiff's Hodgenville practice by hiring additional doctors to attend Plaintiff's patients; VisionFirst would deduct three percent of the gross earnings of the Hodgenville office from Plaintiff's overdraw debt to LOC when he returned; and VisionFirst would make Plaintiff's last draw payment on May 10, 2004.  Plaintiff claims that these terms were separate from his Employment Agreement with LOC and that they were breached.  Defendants suggest that these claims are related to Plaintiff's employment, and thus his Employment Agreement, with LOC and are, therefore, subject to mandatory arbitration.   Plaintiff argues that these claims are not within the purview of the Employment Agreement or the Employment Agreement's Arbitration clause.

Plaintiff claims that Defendants violated the United Services Employment and Reemployment Rights Act ("USERRA").  USERRA protects returning military personnel from being stripped of the employment rights and benefits they would have enjoyed had they not been deployed to serve their country.  Plaintiff posits that the Defendants demoted him upon his honorable discharge from the military.  According to Plaintiff, Schmitt made it clear that Plaintiff's deployment had caused his demotion and any further involvement with the military would deprive Plaintiff of further career opportunities.

3

Plaintiff seeks to enforce Kentucky Revised Statute 320.300. According to Plaintiff, Schmitt and VisionFirst (as a legal entity), are practicing optometry without a license. Plaintiff suggests that the imposition of management policies upon the optometrists employed by LOC constitute the practice of optometry. It is uncontested that Schmitt and VisionFirst are not licensed to practice optometry. Plaintiff contends that he may enforce this statute because Schmitt's and VisionFirst's alleged practice of optometry has caused him damages. Additionally, Plaintiff makes claims of age and gender discrimination as well as a violation of 5 U.S.C. § 6323, which entitles an employee on active duty with a uniformed service to leave without loss in pay.

## STANDARD

The Court must consider several issues in determining whether Plaintiff's claims are subject to mandatory arbitration. First, the Court must decide whether USERRA preempts any contractual obligation to arbitrate. If not, then the Court must decide which claims Plaintiff makes are properly arbitrated under the terms of the Employment Agreement. If the Plaintiff's claims are a proper subject for arbitration, then the Court must examine whether some Defendants were not parties to the Employment Agreement and cannot demand arbitration of Plaintiff's claims against them.

Plaintiff claims that USERRA preempts the arbitration clause in the Employment Agreement. Plaintiff cites language in USERRA stating

> (a) Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.
> (b) This chapter supersedes any State law (including any local law or

4

> ordinance), contract agreement, policy, plan practice, or other matter that
> reduces, limits, or eliminates in any manner any right or benefit provided
> by this chapter, including the establishment of additional prerequisites to
> the exercise of any such right or the receipt of any such benefit.
> 38 U.S.C. § 4302(b) (2006).

According to Plaintiff, the arbitration clause in the Employment Agreement limits Plaintiff's rights to pursue his claims and eliminates his Seventh Amendment right to pursue his claims in a federal court and, therefore, is preempted by the terms of USERRA.  The Supreme Court has charged federal courts to "rigorously enforce agreements to arbitrate," and held that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA," *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226; 107 S.Ct. 2332; 96 L.Ed. 2d 185 (1987); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991).  The Supreme Court has explicitly approved enforcing arbitration agreements to settle matters in the employment and discrimination contexts.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123; 121 S.Ct. 1302; 149 L.Ed.2d 234 (2001).

The Supreme Court has set forth a bipartite test for analyzing whether an arbitration agreement covers statutory claims.  The Court must decide whether the statutory issues are properly within the purview of the arbitration agreement.  The Court must also decide whether any external legal constraints prohibit the enforcement of the arbitration agreement.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628; 105 S.Ct. 3346, 3355; 87 L.Ed.2d 444 (1985).  Plaintiff claims that USERRA preempts the arbitration clause.  Therefore, the Court first considers whether the arbitration clause in the Employment Agreement is enforceable upon Plaintiff's claims under USERRA.

The Supreme Court held that, while "questions of arbitrability must be addressed with a

healthy regard for the federal policy favoring arbitration," statutory issues may not be subject to arbitration if "Congress itself has evinced an intention to preclude a waiver of judicial remedies at issue." *Gilmer*, 500 U.S. at 26. If Congress intends to preclude arbitration, "it will be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Id.*

## ANALYSIS

### I.      Enforceability of Arbitration Agreements Relating to USERRA Claims

In support of his position, Plaintiff cites *Breletic v. Caci, Inc.-Federal*. 413 F.Supp.2d 1329 (N.D. Ga. 2006). *See also Lopez v. Dillard's, Inc.*, 382 F.Supp.2d 1245, 1247 (D. Kansas 2005). The Court in *Breletic* noted that there was no language in Title 38, United States Code, Section 4301, "that indicates Congress intended to prohibit a person in the armed forces from waiving his or her right to a judicial forum for the vindication of those rights created by the USERRA." *Id.* at 1336. However, the Court noted the language of Title 38, United States Code, Section 4302(b) which stated: "This chapter supersedes any... contract[1] [or] agreement... that reduces, limits or eliminates *in any manner* any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit." The Court in *Breletic* found that the imposition of arbitration on employment matters "abrogates... the rights provided by USERRA" to pursue claims in federal court by establishing a prerequisite of arbitration before pursuing those rights. *Breletic*, 413 F.Supp.2d at 1336. The *Breletic* Court reasoned that, while an arbitration agreement does not

---

[1]"[T]he FAA placed 'arbitration agreements on an even footing with all other contracts.'" *Breletic*, 413 F.Supp. 2d at 1336 (quoting *Anders v. Hometown Mortgage Svcs., Inc.*, 346 F.3d 1024, 1032 (11th Cir. 2003)).

require a person to relinquish any substantive rights, it does relinquish the signor's procedural

rights to bring the action in any state in which the signor maintains a place of business, without

fees or court costs being taxed.  *Id.*

      In that case, Breletic was obligated under the arbitration agreement to settle his suit in

Virginia and pay the arbitration fees.  The *Breletic* Court also noted the House Report on

USERRA Section 4302, which states:

> This section would reaffirm that additional resort to mechanisms such as
> grievance procedures or arbitration or similar administrative appeals is not
> required.  It is the Committee's intent that even if a person protected under the
> Act resorts to arbitration, any arbitration decision shall not be binding as a matter
> of law....  An express waiver of future statutory rights, such as one that an
> employer might wish to require as a condition of employment, would be contrary
> to the public policy embodied in the Committee bill and would be void.
> H.R. Rep. No 103-65 (1994), as reprinted in U.S.C.C.A.N. 2453.

Based on both the statutory language and the House Report, the *Breletic* Court found that

USERRA was intended to preempt any agreements to arbitrate and all agreements to arbitrate

issues under USERRA are void.  *Breletic*, 413 F.Supp. 2d 1337-38.

      Defendants advocate the rule in *Garrett v. Circuit City Stores, Inc.*: that USERRA does

not preempt the terms of an Employment Agreement.  The Court in *Garrett* addressed the

language in USERRA Section 4302, but ultimately held that it "is not a clear expression of

Congressional intent concerning the arbitration of servicemembers' employment disputes."

*Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 677 (5th Cir. 2006).  "[B]y agreeing to

arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it

only submits to their resolution in an arbitral, rather than a judicial forum."  *Id.* (quoting

*Mitsubishi*, 473 U.S. at 626-27).  The *Garrett* Court also noted that, in other statutory contexts

such as RICO, the Sherman Act, and the Securities Exchange Acts of 1933 and 1934, courts held

that mandatory arbitration agreements did not abrogate the substantive rights under the statutes.

The Fifth Circuit held that "[w]hen properly interpreted, § 4302(b) can be harmonized with the FAA and mandatory arbitration." *Id.* The *Garrett* Court noted that the rights and purposes of USERRA are substantive, not procedural, and that "[a]n exclusive judicial forum is not a right provided by Chapter 43 of the USERRA." *Id.* at 678. The Fifth Circuit held that "[a]n agreement to arbitrate under the FAA is effectively a forum selection clause, not a waiver of substantive statutory protections and benefits." *Id.* (internal citations omitted). Citing the Supreme Court's preference to enforce arbitration agreements when they do not interfere with the substantive rights provided by statutes, the Court held that arbitration agreements relating to USERRA claims are enforceable. *Id.* The *Garrett* Court also held there was no evidence that an arbitration was an insufficient forum to handle the sort of claims relating to the rights of military personnel filed under USERRA. *Id.* at 681.

In fact, as the Court in *Garrett* notes, USERRA provides for special nonjudicial resolution of USERRA claims for federal workers - a hearing before the Merit Systems Protection Board. This shows that the legislative intent of the statute was not to reserve resolution of USERRA claims for judicial proceedings. *Id.* at 679 (citing 43 U.S.C. § 4323 and *Gilmer*, 500 U.S. at 28). Moreover, the Fifth Circuit held that the language in the House Report relied on in *Breletic* for announcing legislative intent is not necessary to interpret Section 4302. Instead, the Fifth Circuit notes, legislative hearings should only be relied on to interpret ambiguous statutes, and Section 4302 is not ambiguous in its allowance of arbitral resolution on its face. *Id.* at 679 (citing *Exxon Mobil Corp. V. Allapattah Servs. Inc.*, 545 U.S. 546, 162 L.Ed. 2d 502, 125 S.Ct. 2611, 2626 (2005)). Furthermore, the Court noted that if interpretation of

Section 4302 was necessary, the totality of the legislative history showed an intent "only to prohibit the limiting of USERRA's substantive rights by union contracts and collective bargaining agreements," not "arbitration agreements between an employer and individual employee."[2] *Id.* at 680.

While the Court is not bound by either of these cases, the Court follows the logic of the Fifth Circuit as set out in *Garrett*. While the legislative history makes clear that the substantive rights and ability to litigate them should not be diminished by contractual agreements, the legislature did not insert procedural requirements into its definition of claims under USERRA. For this reason, the Court must grant the stay requested as to any claims subject to arbitration.

## II.    Scope of the Arbitration Agreement

Since the arbitration clause in the Employment Agreement is enforceable, the Court must determine which of Plaintiff's claims are subject to mandatory arbitration under the terms of the agreement. In other words, the Court must determine whether Plaintiff's claims arise out of or relate to the Employment Agreement. Plaintiff first argues that his claims arise out of separate terms regarding his employment after deployment which were negotiated outside of the Employment Agreement. Plaintiff continued his employment relationship with LOC before and after his deployment. Plaintiff does not directly claim that he was employed as an optometrist by another business entity, and, indeed, to do so would be in violation of the Employment Agreement. Therefore, Plaintiff's claims against his "employer" must logically relate to his

---

[2]The *Garrett* Court also noted that courts should not rely "on cases involving collective bargaining arbitration as a basis for avoiding arbitration of statutory claims under the FAA." *Id.* (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004)).

employment relationship with LOC, and not a separate employment relationship with VisionFirst or Schmitt.

Next, Plaintiff suggests that if his claims do arise out of his employment with LOC, they do not relate to the Employment Agreement containing the valid arbitration clause.  Rather, Plaintiff argues that his claims relate to his employer's breach of promises made in a separate agreement just before Plaintiff's deployment.  Plaintiff presents no written evidence of Schmitt's alleged promises on behalf of VisionFirst.  According to the Employment Agreement, all binding agreements about Plaintiff's employment must be in writing to supplement the terms of the Employment Agreement.  Plaintiff has not shown any written amendments to the Employment Agreement.  Therefore, these additional claims cannot survive.[3]  All remaining claims relate to Plaintiff's claim that Defendants deviated from the Employment Agreement in demoting Plaintiff after his service in the military.  These claims clearly relate to Defendants' responsibilities arising out of the Employment Agreement and are therefore within the purview of the arbitration clause.

Plaintiff then claims that even if he is bound to arbitrate his claims against his employer, LOC, he is not bound to arbitrate claims against the other Defendants since they were not parties to the Employment Agreement.  It is important to note that Plaintiff sues Rallo, Schmitt, and

---

[3]Even if Plaintiff's claims based on his negotiations with Schmitt on behalf of VisionFirst could survive independently from his Employment Agreement with LOC, they would still be arbitrable.  The Employment Agreement's arbitration clause mandates arbitration for all issues arising out of or relating to the Employment Agreement.  Plaintiff's claims all relate to his employment as an optometrist for a branch of LOC called VisionFirst and managed by Schmitt.  Therefore, any claims regarding promises made by VisionFirst and Schmitt relating to the terms of his future employment with LOC still relate to the Employment Agreement, establishing Plaintiff's employment as a whole.

Pinnacle in their capacities as managers of LOC offices.  His USERRA claims against these defendants necessarily relate to his employment with LOC, since LOC was contractually established to be his only employer and USERRA authorizes claims by an employee against an employer.  Therefore, these remaining claims are in relation to Plaintiff's employment and are subject to arbitration.

### III.     Pendent Jurisdiction

Plaintiff asserts claims against VisionFirst and Schmitt in Count III of his Complaint for practicing without a license.   While these claims do not necessarily relate to his employment and fall under the ambit of claims related to his Employment Agreement, Plaintiff concedes this Court only has pendent jurisdiction over these claims.  The Court has pendent jurisdiction where (1) the claims are filed in federal court and the Court has jurisdiction over the claims; (2) the state and federal claims derive from a "common nucleus of operative fact"; and (3) the claims are such as would ordinarily be adjudicated in one proceeding.  *See Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987); *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank*, 738 F.2d 163, 165 (6th Cir. 1984).  Because the Court has determined that it does not currently have jurisdiction of the related federal claims in this matter due to the arbitration clause in the Employment Agreement, there is no proper claim in federal court to which to attach the state claims.

### CONCLUSION

For the above reasons, the Court grants Defendants' Motion to Stay pending arbitration

11

pursuant to the Employment Agreement.  An appropriate Order shall follow.